HARTWIG-DISCHINGER REALTY COMPANY, a Corporation, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI and JOHN CONGO and ANDREW J. MURPHY, SR., EDWARD C. CROW, and HARRY P. DRISLER, Members, Appellants.—No. 37803.—168 S. W. (2d) 78.

Court en Banc, January 29, 1943.

*George A. Rozier*, Chief Counsel, and *Edward D. Summers*, Assistant Counsel, for appellants; *Harry G. Waltner, Jr.*, of counsel.

692

*Robert L. Maul* for respondent.

*Emmett Golden* and *Rene J. Lusser* for St. Louis Real Estate Exchange, *amicus curiae.*

694

HAYS, J.—The present proceeding was commenced by the filing with the Unemployment Compensation Commission of a claim by one John Congo. In said claim Congo alleged that he had last worked for the present respondent, the Hartwig-Dischinger Realty Company (hereinafter called the Hartwig Company). Claimant was employed as a janitor of an apartment building which was owned by the Byron Realty and Investment Company (hereinafter called the Byron Company). The Hartwig Company, as an employer, is admittedly subject to the provisions of the Missouri Unemployment Compensation Act [Art. 2, Ch. 52, R. S. Mo. 1939.] It is conceded that the Byron Company is not subject to said act. Therefore if the claimant were employed by the Hartwig Company he would be entitled to compensation, but if he were employed by the Byron Company his claim must necessarily be denied. The claim was allowed by the full commission and proceedings were instituted in the circuit court to set aside such allowance. From a judgment of the court, setting aside the order of the commission, an appeal has been taken.

The facts with reference to Congo's employment are as follows: The apartment house where he worked was encumbered by a mortgage securing bonds held by a number of individuals. This mortgage

became in default and a foreclosure thereof was sought. In order to protect the interest of the bondholders by buying in the property at foreclosure the Byron Company was incorporated. The stock of such company was held by the former bondholders in proportion to the number of bonds they had owned. Some of these incorporators were interested also in the Hartwig Company which was engaged in the real estate business and which had existed for sometime prior to the incorporation of the Byron Company. After the purchase of the apartment building at the foreclosure sale the Byron Company made an arrangement with the Hartwig Company for the management of the apartments. The Hartwig Company rented the various apartments to individuals, looked after repairs, deposited the rent money in a special rental account from which it paid taxes, water rates and other expenses and periodically accounted to the Byron Company for the gross profits, deducting therefrom a fixed proportion as a commission for its managerial services. The actual management of the apartment was done by one Mueller who was admittedly at all times a regular employee of the Hartwig Company and was placed in charge of said work by the Hartwig Company. Congo was unemployed. He advertised in a newspaper for a job. He was then called on by Mueller who made an arrangement to hire him. The name of the Byron Company was not mentioned in the transaction. It is also shown that Mueller hired certain other persons for work in connection with the apartment. One was a resident manager who was given her rent as part of her compensation. Another was a man who did cleaning and repairing occasionally. The checks by which Congo was paid were all drawn by the Hartwig Company. Toward the end of his employment the company inserted on each check a notation: "For services rendered to Byron Realty and Investment Company." Congo denied that such notation was on the checks when he got them and it seems plain that the notation was not used on the earlier checks. Congo was discharged at the end of his employment by Mueller.

As stated above the first question to be decided is: Was Congo an employee of the Hartwig Company or of the Byron Company? It is, of course, possible for a principal to appoint an agent and authorize such agent specifically to employ a subagent or servant who then becomes an employee of the principal. Was this situation present in the instant case? Or was the Hartwig Company an independent contractor which had agreed to perform all of the managerial functions in connection with the apartment building through its own employees? This court has recently had occasion to consider again the distinction between agents and independent contractors. [Bass v. Kansas City Journal Post Co., 347 Mo. 681, 148 S. W. (2d) 548.] We there cited with approval a statement ■ contained in the American Law Institute, Restatement of the Law of Agencies, sec. 2:

"A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." A more detailed analysis of the relationship of independent contractors is found in the case of Skidmore v. Haggard, 341 Mo. 837, 110 S. W. (2d) 726, l. c. 729, and many of the cases are collected in the following annotations: 19 A. L. R. 1168, 20 A. L. R. 684, 61 A. L. R. 223, 75 A. L. R. 725, Ann. Cases 1918-C 672. See also Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909, l. c. 916.

The exact terms of the agreement between the Hartwig and the Byron Companies are not shown by the record. The proceeding before the Commission was informal. Much legally incompetent evidence was received and it is difficult to determine on the basis of legally competent evidence all of the facts of the case. For example, no weight can be given to the assertion of the President of the Byron Company that the Hartwig Company was its agent or that the Byron Company had a right to put a man out there as a janitor. Such statements are mere legal conclusions of the witness. In view of this absence as to the express terms of the oral contract we are forced to draw such inferences as possible concerning the contract from what was actually done by the parties. Actually no control whatever was exercised by the Byron Company over the manner in which the Hartwig Company managed the apartment. All that the Byron Company did was to receive a check for the net profits of the venture. As stated, the renting of apartments and the collection of rent, the payment of all expenses including the wages of Congo, the payment of taxes and the overseeing of repairs to the building were conducted by the Hartwig Company. The Hartwig Company was engaged in performing similar services for many other real estate owners. It did not receive a fixed compensation from the Byron Company but took a commission which was a proportion of the gross profits of the enterprise. Under these facts, and applying to them the rule laid down in the cases of Bass v. Kansas City Journal Post Co., 347 Mo. 681, 148 S. W. (2d) 548, supra, and Skidmore v. Haggard, 341 Mo. 837, 110 S. W. (2d) 726, supra, it is apparent that the Hartwig Company acted as an independent contractor and not as the agent of the Byron Company.

This was the finding of facts made by the Unemployment Compensation Commission and such finding is supported by substantial competent evidence. As such it is binding upon this court. [A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184.]

However, even if it were held that the Hartwig Company was an agent of the Byron Company, it did not disclose this fact of agency to Congo at the time he was employed. It is a general rule that where one who is in fact the agent for another makes a contract with the third person without disclosing the fact of agency, or if he discloses such fact without disclosing the identity of his principal, he will be individually bound by the contract and the third party may hold the agent or the undisclosed principal at his election. [Am. Law Inst., Restatement of Law of Agency, sec. 322; 2 Am. Jur., Agency, sec. 404.] This rule applies to the agent of an undisclosed principal who employs the services of another. [Curtis v. Miller (Va.), 80 S. E. 774, 50 L. R. A. (N. S.) 601.] Respondent says, however, that the undisclosed principal rule cannot apply to this case because Congo was actually employed by Mueller and did not know that Mueller was acting as the agent of the Hartwig Company. This fact is immaterial. Mueller was actually acting as the agent of the Hartwig Company. The case, then, stands exactly as it would had the Hartwig Company directly, through its directors and officers, hired Congo. If that had been true and the Hartwig Company had not disclosed the fact of its agency—if it were an agent—to Congo, he might have held either corporation at his election.

But it is said that Congo made such an election to hold the Byron Company when he accepted pay checks with the notation above set out on them. It is to be remarked that at the time the contract of employment was made and for a long time thereafter no such notation was placed on the checks. The mere fact that during the latter months of Congo's employment he accepted and cashed these checks certainly does not constitute an election to hold the Byron Company alone as his employer for the checks were drawn by the Hartwig Company. It seems clear, therefore, that Congo was actually an employee of the Hartwig Company and, as such, is entitled to the compensation awarded him by the commission.

Another question is raised in the case which is not directly necessary for its decision but in view of the action of the trial court should be mentioned in this opinion, namely: The parties defendant in the review proceeding in the circuit court, in addition to the claimant, were the Unemployment Compensation Commission and its respective members. In holding against the latter the trial court awarded costs and taxed the same against these defendants. These costs should not have been taxed against the Unemployment Compensation Commission and its members since they were merely representing the State of Missouri in the case. [Murphy et al. v. Limpp, 347 Mo. 249, 147 S. W. (2d) 420.]

The judgment of the circuit court was for the wrong party. The

698

decision of the Commission must be sustained and the judgment below reversed. It is so ordered.

PER CURIAM:—The foregoing opinion by HAYS, J., in Division One is adopted as the opinion of the Court en Banc. All concur except *Gantt, J.*, absent.