William F. MAUER, Respondent,

v.

BOARD OF TRUSTEES OF the MIS-
SOURI STATE EMPLOYEES'
RETIREMENT SYSTEM, Appellant.

No. WD 40489.

Missouri Court of Appeals,
Western District.

Dec. 20, 1988.

**518**

William L. Webster, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., Jefferson City, for appellant.

William F. Mauer, Kansas City, for respondent.

Before FENNER, P.J., and MANFORD and GAITAN, JJ.

GAITAN, Judge.

This is an appeal by the Missouri State Employees' Retirement System (MOSERS), appellant, from a summary judgment granted in favor of William F. Mauer, respondent, in a suit to determine the correct payment of benefits under the MOSERS Medical Care Plan. Appellant alleges that the trial court erred on four points: (1) in granting summary judgment when there were genuine issues of fact in controversy, and a defective affidavit in support of the Motion for Summary Judgment did not render facts admitted; (2) the basis of denial of respondent's claim did not change and there was no detriment to the respondent in pursuing his remedies and the court erred in so finding; (3) in awarding either the return of the cost of the Peer Review Group or prejudgment interest to respondent; and (4) in assessing the cost of the action against MOSERS when costs cannot be assessed against the state or its agencies.

Appellant, MOSERS, is the statutory system authorized by law to provide retirement benefits, a medical care plan and insurance benefits to Missouri state employees, elected officials and their dependents. The particular statute applicable to the Medical Care Plan is § 104.515, RSMo 1986.

Respondent is a Jackson County Circuit Court Judge and is a member of MOSERS. He has provided under the Medical Care Plan for his wife, Pamela Mauer, whose claim is the subject of this litigation. On September 17, 1985, Mrs. Mauer underwent surgery for an abdominal hysterectomy, oophorectomy and appendectomy. Her claim for benefits was submitted on October 14, 1985 based on surgical charges as follows: $1500 for the abdominal hysterectomy; $275 for the oophorectomy; and $225 for the appendectomy. Since the surgery occurred in the Kansas City area, the claims were processed by MOSERS based on reasonable and customary allowances in Kansas City.

As a result of processing the claim, MOSERS paid the full charges for the oophorectomy and appendectomy, but the abdominal hysterectomy was partially paid. The explanation of benefits form stated the reason of the non-covered hysterectomy charge was that "benefits are limited to reasonable and customary allowances." There was no other explanation for the non-covered charge until respondent received a review letter from the Peer Review Group dated May 21, 1986. In that letter it stated that: "the charge for the oophorectomy, which was separately charged and paid by your plan, is generally included in the charge for the hysterectomy.... The reviewing physician felt the appendectomy was incidental and questioned whether it merited a separate charge. However, $1500 for an abdominal hysterectomy is considered usual and customary in the Kansas City area."

A Petition was filed in the Circuit Court of Cole County on December 11, 1986, against the Board of Trustees, along with the individually named members, seeking the difference between what was paid by MOSERS for the claim and the total bill, plus attorney's fees and costs. A First Amended Petition was filed on March 19, 1987, seeking the same relief but adding a claim for William Mauer as Count II. The claim relating to Count II was resolved and paid, and a Second Amended Petition was

filed dismissing Count II and clarifying the names of the appropriate Board members.

In both the Petition and First Amended Petition respondent claimed that appellants are estopped from changing their first position stated in the reason for not allowing total coverage of the abdominal hysterectomy and relying on a different defense in the letter from the Peer Group Review. An Answer was filed by MOSERS reiterating its position that if all procedures were included in the total charge of $1500, it would not be in excess of the usual and customary charges for an abdominal hysterectomy. However, MOSERS stated that where the procedures were billed separately, as in this instance, the total charges exceed the usual and customary charges for an abdominal hysterectomy in the Kansas City area. MOSERS stated that complete and full payment had been made under the provision of the Medical Care Plan.

Respondent filed a Motion for Summary Judgment on September 8, 1987. In the motion it was asserted that there were no genuine issues as to any material fact and that there was a departure of defenses by MOSERS in that the separate charges for the oophorectomy and appendectomy in addition to charges for the hysterectomy exceeded the usual and customary charges for such surgery in the Kansas City area. Summary judgment was granted in the amount of $466.00 plus $57.87 (the cost of Peer Group Review), plus interest in the amount of $84.91 for a total of $608.78, plus costs.

Appellant contends that the statement labeled as an affidavit submitted in support of the motion for summary judgment was defective, thereby the facts in the motion could not be rendered admitted. Also, in the same vein, appellant contends that the granting of respondent's motion for summary judgment was in error.

■ Rule 74.04(a) states that a party may "move with or without supporting affidavits for a summary judgment in his favor upon all or any part" of his claim. Additionally, a summary judgment may rest upon the pleadings alone. *Pennell v. Polen*, 611 S.W.2d 323 (Mo.App.1980) (citing *Sam Kraus Company v. State Highway Commission*, 416 S.W.2d 639, 641[1] (Mo.1967)).

In the case at bar, the alleged affidavit is nothing more than a declaration of information contained in the motion. It is not an affidavit in the true sense of the word. Nonetheless, the alleged affidavit is not a requisite for a ruling upon a motion for summary judgment. Rule 74.04(a). The granting of a motion, as in the case at bar, may be based upon the pleadings alone. The motion here does not encompass matters outside the pleading, and all facts alleged in the motion are facts admitted by appellant in the pleadings and in the suggestions in opposition to the motion for summary judgment. Therefore, the defectiveness of the alleged affidavit is insignificant.

Regardless of the form of the alleged affidavit, the granting of summary judgment is a drastic remedy. *Kennon v. Citizens Mutual Insurance Company*, 666 S.W.2d 782, 784 (Mo.App.1983). Summary judgment is only appropriate if the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. *Id.* In reviewing a grant of summary judgment, this Court "must scrutinize the record in the light most favorable to the party against whom summary judgment was rendered." *Id.* The party who was granted summary judgment must show "that under no discernable circumstances could the opposing party be entitled to recover." *Bakewell v. Missouri State Employees' Retirement*, 668 S.W.2d 224, 229 (Mo.App.1984).

■ In the case at bar, the question is whether appellant, having once denied coverage, later asserted denial of coverage based upon other grounds. The law is clear that once liability is denied on one basis, the insured has relied to his detriment by preparing to meet the defense asserted, the insurer waives all other defenses to the claim asserted. *Lawrence v. New York Life insurance Co.*, 649 S.W.2d 461, 464 (Mo.App.1983); and 44 Am.Jur.2d *Insurance* § 1665 (1982).

■ Here, the basis for denial of appellant's claim changed and he was prejudiced in pursuing his remedies under the first theory. The explanation of benefits form only indicated that the charge for the abdominal hysterectomy was unreasonable. There were no explanation codes or reasons indicating that the oophorectomy and appendectomy charges were unreasonable or should have been included in the abdominal hysterectomy charge. It is undisputed that these charges were paid in full. The explanation of benefits stated that the reduction in the amount paid for the abdominal hysterectomy was because "benefits are limited to reasonable and customary allowances." This explanation only indicates that cost of the hysterectomy was unreasonable. However, in the letter from MOSERS giving the Peer Group Review's determination, it stated that the $1,500 for an abdominal hysterectomy is considered usual and customary for the Kansas City area. The letter stated that the charge for the oophorectomy, which was separately charged and paid, is generally included in the charge for the hysterectomy. This is the first indication that the other charges were in some way unreasonable or not customary. It was then concluded that the two additional surgeries were usually and customarily included in the total charge for the hysterectomy and that the total payment for the hysterectomy was usual and customary.

The reduction in the amount paid and the reason thereof, only related to the abdominal hysterectomy. The later reason given for denying total payment for the hysterectomy related to all charges although only the hysterectomy charge was appealed. These two reasons for denial of full payment are not the same. Therefore, the later reason given for not paying the total amount charged for the abdominal hysterectomy was a change in position. Thus, the reason given in the explanation of benefits stands and the insurer is estopped from giving another reason for denial. The granting of the summary judgment was proper.

■ Appellant next contends that the trial court erred in awarding return of the cost of the Peer Review Group. We disagree. Under the general guise of ambiguous words or phrases used in insurance policies, it is the well established rule that the courts give liberal meaning to these words or phrases. *See Behr v. Blue Cross Hospital Service, Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986). Any doubts about meaning of words are to be construed against the insurance company and in favor of the insured. *Nixon v. Life Investors Insurance Co. of America,* 675 S.W.2d 676, 679 (Mo.App.1984).

In the case at bar, the Medical Care Plan booklet provides:

Any cost incurred in the peer group review will be your responsibility if you request it and if the claim denial is upheld. *If the claim denial is reversed* or if the request for a peer group review is made by MOSERS, *the cost involved will be paid by MOSERS.*

The above-emphasized words are ambiguous in that it is not clear whether the cost will be paid by MOSERS if the claim denial is reversed by the Peer Group Review itself or if the claim denial is ultimately reversed. This Court construes these words in favor of the insured and interprets the words to mean that MOSERS will pay the cost of the Peer Group Review if the claim denial is ultimately reversed. Therefore, the trial court was correct in ordering the return of monies paid by respondent for the Peer Group Review.

■ Appellant also contends the prejudgment interest should not have been awarded to respondent. Missouri law in *Catron v. Columbia Mutual Insurance Company,* 723 S.W.2d 5 (Mo. banc 1987), suggests that the award was appropriate. The Court stated that "Missouri Courts have allowed prejudgment interest for insurance claims where the parties did not agree to the amount due under the policy." *Catron,* 723 S.W.2d at 7. Prejudgment interest has been allowed even where the insured has demanded a much greater amount than was actually owed to him. *Id.* (citing *Boenzle v. United States Fidelity*

*and Guaranty Co.,* 258 S.W.2d 938 (Mo. App.1953)). Therefore in the case at bar, prejudgment interest is allowable.

 Appellant's last point is that the trial court erred in assessing costs against MOSERS. We agree. Section 104.320, RSMo 1986 states that "[t]he Missouri state employees' retirement system shall be a body corporate and an instrumentality of the state." Absent a specific statute permitting assessment of court costs to a state agency, it is reversible error to assess costs. In *State ex rel. School District of the City of Independence v. Jones,* 653 S.W.2d 178 (Mo. banc 1983), the Court stated:

> Defendants' final contention, unanswered by plaintiffs, is that the trial court erred in ordering them to pay court costs. As previously noted, defendants are the members of the State Tax Commission, the State Commissioner of Education, State Department of Elementary and Secondary Education and the State Board of Education and its members. Each defendant is a state agency or official. The rule is well established that absent statutory provision court costs cannot be recovered in state courts from the State of Missouri or its agencies or officials. *E.g., Murphy v. Limpp,* 347 Mo. 249, 147 S.W.2d 420, 423 (Mo.1940). As no such statutory provision is cited, we find the court erred in assessing costs against defendants.

*Id.* at 191.

There are numerous cases holding that the state or its agencies may not be assessed court costs even where the state agency does not prevail in such action. *See Howard v. McNeill,* 716 S.W.2d 912, 915 (Mo. App.1986); *Bradley v. McNeill,* 709 S.W.2d 153, 156 (Mo.App.1986); *Nicolai v. State,* 622 S.W.2d 764, 765 (Mo.App.1981); and *Labor's Educational and Political Club–Independent v. Danforth,* 561 S.W.2d 339, 350 (Mo. banc 1977). Since there is no statute authorizing costs to be assessed, the trial court erred in assessing those costs. Costs must be assessed against respondent. *Nicolai,* 622 S.W.2d 7 at 765.

The judgment of the trial court is affirmed in part and reversed in part.

All concur.