**CHURCH OF GOD IN CHRIST CONGREGATIONAL OF MISSOURI, Appellant,**

v.

**SECURED HOUSING, INC., Respondent.**

**No. ED 77946.**

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 27, 2001.

---

Welsh & Hubble, P.C., Lester J. Hubble, Terry A. Parkinson, St. Louis, MO, for appellant.

Greensfelder, Hemker & Gale, P.C., Richard R. Hardcastle, Andrew W. Manuel, St. Louis, MO, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Church of God in Christ Congregational of Missouri, ("appellant"), appeals the judgment entered by the Circuit Court of St. Louis County, granting a motion for summary judgment in favor of the respondent, Secured Housing, Inc., ("respondent"). We dismiss for lack of jurisdiction.[1]

Appellant is a Missouri not-for-profit corporation originally incorporated in 1965. Respondent is a Missouri corporation formed for the purpose of developing a private prison facility in the St. Louis area. The underlying action involves a sale of real estate located at 6600 Ridge Avenue in Wellston, Missouri. Appellant acquired the property in question in 1991. Respondent claims that it entered into a sale contract to purchase the property on August 25, 1994, with appellant and closed on the property on October 6, 1997.

On October 9, 1998, appellant filed a three-count petition. In count I, appellant petitioned to quiet title against respondent. Counts II and III were addressed to another defendant, Stanley Newsome, for conversion, and money had and received.[2]

---

1. Respondent's motion to dismiss appellant's appeal is hereby denied.

2. Stanley Newsome took part in the negotiation and sale of the property.

Counts II and III are still pending in the trial court. On December 11, 1998, respondent filed its answer, affirmative defenses and counterclaims in response to appellant's suit to quiet title. On January 11, 1999, respondent filed its motion for summary judgment as to count I. On June 25, 1999, the trial court granted respondent's motion for summary judgment as to Count I.

On March 23, 2000, Church of God in Christ Congregation, a/k/a Church of God in Christ Congregation of Missouri ("intervenor"), filed a motion to intervene. Intervenor claimed that it is the real party in interest and not the appellant. In addition, intervenor prayed the trial court to allow it to file its declaratory judgment action, which was attached and made part of the motion to intervene.[3] On March 29, 2000, respondent filed a motion to make order and judgment final. On April 17, 2000, the trial court granted intervenor's motion to intervene and denominated it as a party defendant. On May 4, 2000, the trial court granted respondent's motion to make the order and judgment final pursuant to rule 74.01(b). Appellant appealed. While this case was on appeal, respondent dismissed its counterclaims against appellant, which were pending before the trial court.

Appellant raises two points on appeal. It argues the trial court erred: 1) in granting respondent's motion for summary judgment; and 2) in issuing its order determining that this matter was final for purposes of appeal. Since the second point is dispositive, we will only address it.

■■■ "Parties may only appeal from a final judgment, meaning one that disposes of all claims and parties leaving nothing for further determination." *Spectrum Cleaning Services v. Blalack*, 990 S.W.2d 656, 658 (Mo.App. E.D.1999). Appellate courts must dismiss an appeal for lack of jurisdiction, if the trial court's judgment is not final. *Id.* However, "Rule 74.01(b) provides an exception to the finality rule for cases involving multiple claims, allowing the trial court to enter judgment on less than all claims and certify that there is no just reason for delay." *Id.* Nevertheless, the trial court's designation of an order and judgment as final and appealable, is not conclusive and is fully reviewable on appeal. *Id.*

■■■ "The decision about whether and when to sustain a Rule 74.01(b) motion is a matter of discretion with the trial court." *Magna Bank of Madison Cty. v. W.P. Foods*, 926 S.W.2d 157, 160 (Mo.App. E.D. 1996). A four-factor test is applied when determining whether the certification of a judgment under Rule 74.01(b) is proper: "(1) whether the action remains pending in the trial court as to all parties; (2) whether similar relief can be awarded in each separate count; (3) whether determination of the claims pending in the trial court would moot the claim being appealed; and (4) whether the factual underpinnings of all the claims are intertwined." *Nooney v. NationsBank, N.A.*, 996 S.W.2d 783, 787–788 (Mo.App. E.D.1999).

■■■ After reviewing the record of the case at bar with regard to these factors, we conclude the trial court abused its discretion in granting respondent's motion to make order and judgment final pursuant to Rule 74.01(b). We find that a determination of the declaratory judgment action pending before the trial court could possibly moot this appeal, if intervenor prevails in the trial court below. Intervenor was allowed to intervene and to file a declaratory judgment action. In the motion to intervene and to file a declaratory judgment action, which was granted by the trial court, intervenor alleged that appellant is not a real party in interest in the property in question. Intervenor claims to be the real party in interest both as to the

---

3. On May 15, 2000, appellant filed its answer, affirmative defenses, and counterclaims. Appellant alleged that intervenor was not incorporated with the state of Missouri until March 25, 1998. In addition, appellant claimed that intervenor was not a real party in interest.

sale of the real property and the proceeds therefrom. If intervenor prevails in the declaratory judgment action, then this appeal will be rendered moot. Moreover, prior to granting respondent's motion, the trial court was aware of respondent's counterclaims against appellant, which were subsequently dismissed by respondent, while this case was on appeal. Thus, the trial court abused it discretion in granting respondent's motion to make order and judgment final pursuant to Rule 74.01(b).

Based on the foregoing, we dismiss the appeal for lack of jurisdiction.

CRAHAN, J., concurs.

DRAPER, J., dissents in separate opinion.

DRAPER, Judge, dissenting.

I respectfully dissent from the majority opinion and would vote to affirm the decision of the trial court for the reasons set forth below.

Secured Housing, Inc. (hereinafter, "Secured Housing") entered into discussions with the Church of God in Christ Congregational of Missouri (hereinafter, "Congregational") regarding the sale and purchase of real estate in Wellston, Missouri (hereinafter, "the property") in 1994. In June 1994, Congregational issued a resolution by its Board[1] authorizing Stanley Newsome (hereinafter, "Newsome"), the Church Vice President, to represent Congregational in negotiations and closing of the property sale.[2] Ken Rothman (hereinafter, "Rothman"), a Secured Housing officer, negotiated for the property. During these negotiations, Rothman dealt with Newsome and his father, Bishop Honor Newsome (hereinafter, "Bishop") who was the Chairman/President of Congregational.

Further, Rothman received a written copy of Congregational's resolution by the Board authorizing Newsome to conduct negotiations on its behalf.

On August 25, 1994, Secured Housing contracted with Congregational for the sale of the property. Both Newsome and Bishop signed the contract on behalf of Congregational. Subsequent to the contract, Congregational ratified the agreement by passing another resolution which was transmitted to Secured Housing.

Following the contract, Congregational worked with Secured Housing to effect changes on the property to facilitate closing, such as changing the property's zoning and initiating an ejectment suit. During the ejectment suit, Bishop died; however, Secured Housing continued dealing with Newsome on behalf of Congregational.

Secured Housing received a General Warranty Deed for the property at the closing which occurred on or about October 6, 1997. During the pendency of the contract, Congregational never informed either Secured Housing or Rothman that Newsome was no longer authorized to act on its behalf.

Secured Housing had the burden at trial of proving that Newsome had actual or apparent authority to bind Congregational, the principal, to a contract to sell the property. *Nichols v. Prudential Ins. Co. of America*, 851 S.W.2d 657, 661 (Mo.App. E.D.1993).

[A] principal ... is responsible for the acts and agreements of its agents which are within their actual or apparent authority.... Actual authority may be express or implied. Express authority is created when the principal explicitly

---

1. This writer recognizes the dispute over the authorization of the composition of the Congregational Board Members.

2. The relevant portion of the resolution by the Board reads:
    RESOLVED, that Stanley Newsome is to represent the Corporation in the negotia-

tion and if a sale is made the closing of the sale of property at 6600 Ridge Avenue, St. Louis, MO 63133 (legal description to follow) to Secured Housing, Inc. and be it that this resolution be hereby fully ratified and approved.

tells the agent what to do. Implied authority consists of those powers incidental and necessary to carry out the express authority.

*Id.* (*citations omitted* ).

Apparent authority is created when a principal causes a third person to reasonably believe that another person has authority to act for the principal. *Id.* In order for apparent authority to exist, there must be evidence that there was direct communication by the principal to the third party or that the principal knowingly permitted its agent to exercise authority. *Id.* "Once established, apparent authority is the equivalent of expressly conferred authority as far as third persons are concerned. Where apparent authority exists and an innocent third party relies upon it, the principal is estopped to deny the agent's authority." *Utley Lumber Co. v. Bank of the Bootheel,* 810 S.W.2d 610, 613 (Mo.App. S.D.1991) (*citations omitted* ).

By the express endorsement of the resolution of Congregational's Board, Secured Housing relied upon Newsome's authority to negotiate and close the sale of the property. Secured Housing was not informed by any act or deed by Congregational or its subsequent entities that Newsome no longer had authority as its agent. "Delay in repudiating an unauthorized act may be found to be consent, and so ratification exists. Even though no consent is spelled out, if the principal fails to notify persons whom he should realize may change their positions believing the act to be authorized, liability may be imposed upon the principal." Harold Gill Reuschlein & William A. Gregory, The Law of Agency and Partnership Section 25, at 68 (2d ed.1990). Secured Housing relied on this apparent authority granted by Congregational and the presence of Bishop acting in his capacity as president of Congregational. Hence, Congregational and the subsequent entities, as principals, are estopped from denying Newsome's closing of the property in a trial approximately a year following closing.

I would vote to affirm the judgment of the trial court.